**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Heather Quinn, individually and on behalf of all others similarly situated, | 1:21-cv-05513 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Trader Joe's Company, | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.      Trader Joe's Company ("defendant") manufactures, labels, markets, and sells organic frosted toaster pastries purporting to be filled only with strawberries ("Product").



2.      The packaging contains pictures of eight strawberries and no other fruits.

3. The side panel describes the attributes of the Product:



A far cry from typical toaster pastries, Trader Joe's Organic Frosted Toaster Pastries are made with organic ingredients like organic whole wheat flour, organic evaporated cane sugar, and organic fruits purees. They're made without artificial flavors, preservatives or synthetic colors. You could say they're organically delicious. And there's one sure fire way to find out. Pop one in the toaster. Remove. Eat. You'll be glad you did.

4. This description is written on a farm fence background, surrounded by strawberries, furthering the impression that the Product's filling is only or mostly strawberries, and that the non-filling ingredients are of the highest quality.

5. The representations are misleading because they give consumers the impression the fruit filling contains a greater relative and absolute amount of strawberries than it does.

## I. INCREASE IN SNACKING FUELS EMPHASIS ON HEALTHY INGREDIENTS

6. Research shows that consumers are eating fewer meals and more snacks.

7. Many consumers seek snacks which are a "healthy indulgence," which is a "a treat with all the flavor and taste desired, without the guilt of eating something 'bad' for you," due to the presence of ingredients known to confer positive health benefits.[1]

---

[1] FONA International, Trend Insight: Indulgence, November 28, 2018.

2

8.    Defendant is aware that a greater percentage of consumers are eating more snacks and emphasizes the importance of *valued* fruit ingredients to make up for what people don't get enough of at meals.

## II.    CONSUMERS VALUE STRAWBERRIES

9.    Strawberries are the most popular berry fruit in the world.

10.    According to the U.S. Department of Agriculture, "Americans now consume twice as many strawberries as they did two decades ago."[2]

11.    Consumers seek strawberries for their nutritive properties, because according to WebMD, they can "protect your heart, increase HDL (good) cholesterol, lower your blood pressure, and guard against cancer."[3]

12.    These benefits are because strawberries have one of the highest levels of nutrient-density of all fruits.

13.    Strawberries are "an excellent source of vitamin C," necessary for immune and skin health.

14.    One serving of strawberries provides more vitamin C than an orange.[4]

15.    Strawberries have uniquely high levels of antioxidants known as polyphenols, micronutrients that naturally occur in plants.[5]

---

[2] The California Strawberry Commission, Consumer Trends: American Strawberry Consumption Doubles, May 7, 2013.
[3] Andrea Gabrick, Nutritional Benefits of the Strawberry, WebMD.com; María Teresa Ariza, et al. "Strawberry achenes are an important source of bioactive compounds for human health." *International journal of molecular sciences* 17.7 (2016): 1103.
[4] Adda Bjarnadottir, MS, RDN, Strawberries 101: Nutrition Facts and Health Benefits, Healthline.com, March 27, 2019; Sadia Afrin, et al. "Promising health benefits of the strawberry: a focus on clinical studies." *Journal of agricultural and food chemistry* 64.22 (2016): 4435-4449.
[5] Tamara Y. Forbes-Hernandez, et al. "The healthy effects of strawberry polyphenols: which strategy behind antioxidant capacity?" *Critical reviews in food science and nutrition* 56.sup1 (2016): S46-S59.

16.  These polyphenols include flavonoids, ellagitannins, flavanols and phenolic acid.[6]

17.  Polyphenols prevent or reverse cell damage caused by aging and the environment, which is linked to greater risk of chronic diseases.

18.  The benefits from strawberries cannot be provided by strawberry "flavor," which refers to compounds extracted from strawberries used solely for taste, without their nutritional value.

19.  It is not just consumers' subjective preferences which value strawberries over other fruits.

20.  Market price data confirms strawberries are the most expensive of the major fruits tracked by the Bureau of Labor Statistics ("BLS") in its research on consumer prices.



21.  According to BLS, apples are typically between $1.20 and $1.50 per pound while strawberries are no less than between $2 and $4 per pound.[7]

---

[6] Francesca Giampieri, et al. "Strawberry consumption improves aging-associated impairments, mitochondrial biogenesis and functionality through the AMP-activated protein kinase signaling cascade." *Food chemistry* 234 (2017): 464-471; Francesca Giampieri, et al. "The healthy effects of strawberry bioactive compounds on molecular pathways related to chronic diseases." *Annals of the New York Academy of Sciences* 1398.1 (2017): 62-71.
[7] Stephen B. Reed, "Slicing through fruit price volatility," Beyond the Numbers: Prices and Spending, Vol. 3:28, Bureau of Labor Statistics, December 2014.

III. **STATE AND FEDERAL REGULATIONS REQUIRE FRONT LABEL TO DISCLOSE THAT FRUIT FILLING DOES NOT ONLY CONTAIN STRAWBERRIES**

22.     Federal and identical state regulations require a product's front label to contain a common or usual name which accurately identifies or describes, "in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." 21 C.F.R. § 102.5(a); Illinois Food, Drug and Cosmetic Act ("IFDCA"), 410 ILCS 620/1 et seq.; 410 ILCS 620/21(j) ("[a] federal regulation automatically adopted pursuant to this [Federal Food, Drug & Cosmetic] Act takes effect in this State on the date it becomes effective as a Federal regulation.").

23.     Defendant's representations violate 21 U.S.C. § 343(a)(1) and 410 ILCS 620/11, which deem a food misbranded when the label contains a statement that is "false or misleading."

24.     Thus, a violation of federal food labeling laws is an independent violation of Illinois law and actionable as such.

25.     The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, provides protection for consumers purchasing products like Defendant's Product, and states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression, or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . are hereby declared unlawful

26.     Whether the fruit content of a toaster pastry includes only strawberries, mostly strawberries or merely some strawberries, supplemented by less-valued fruit ingredients, is basic front label information consumers rely on when making quick decisions at the grocery store.

27.     Strawberries are the Product's characterizing ingredient, since their amount has a material bearing on price and consumer acceptance, and consumers expect they are present in an amount greater than other fruits.

5

28.     The Product's common or usual name of "Organic Frosted Toaster Pastries – Strawberry," is false, misleading, and deceptive because the predominant fruit filling ingredient is apples, shown on the ingredient list as "Apple Puree Concentrate."



**INGREDIENTS:** WHEAT FLOUR, CANE SUGAR, INVERT CANE SYRUP, PALM OIL, WHOLE WHEAT FLOUR, APPLE PUREE CONCENTRATE, CORN STARCH, STRAWBERRY PUREE CONCENTRATE, RICE STARCH, LEAVENING [BAKING SODA, CREAM OF TARTAR], VITAL WHEAT GLUTEN, DEXTROSE, TAPIOCA STARCH, STRAWBERRY FLAVOR, CULTURED DEXTROSE, SEA SALT, VEGETABLE JUICE FOR COLOR, HONEY, MOLASSES, CITRIC ACID, WHEY PROTEIN CONCENTRATE (MILK), ALGIN, SODIUM CITRATE, MONOCALCIUM PHOSPHATE.

29.     Because the relative amounts of the ingredients are determined based on their order of predominance by weight, it is evident that the amount of apple ingredients ("Apple Puree Concentrate" – sixth ingredient) exceeds the amount of strawberry ingredients ("Strawberry Puree Concentrate" – eight ingredient). *See* 21 C.F.R. § 101.4(a)(1).

30.     The Product contains more "Corn Starch" than strawberries, as this ingredient is listed ahead of "Strawberry Puree Concentrate."

31.     The amount of strawberry ingredients is insufficient not merely to provide the

nutrient benefits of strawberries but to provide a strawberry taste.

32.     This is evident from the ingredient identified as "Strawberry Flavor."

33.     Strawberry flavor is the term for a collection of compounds, only some of which may have originated in strawberries, mixed together in a laboratory with solvents and additives, that is intended to make a food taste like strawberries.

34.     The Product's name is misleading because it fails to include the statement, "Natural Strawberry Flavored" in proximity to "Organic Frosted Toaster Pastries." 21 C.F.R. § 101.22(i).

35.     The Product's name is required to, but fails, to include the percentage of the characterizing strawberry ingredients, vis-à-vis the apple ingredients, because the amount of strawberries has a material bearing on price and consumer acceptance. 21 C.F.R. § 102.5(b).

36.     Examples of this disclosure could be, "Fruit Filling – 80% Apple, 20% Strawberry." 21 C.F.R. § 102.5(b).

37.     The Product's name, "Organic Frosted Toaster Pastries – Strawberry," is misleading because it includes "Strawberry," but does not include apples, even though the fine print of the ingredient list reveals the fruit filling is mostly apples. 21 C.F.R. § 101.18(b).

38.     Toaster pastries which contain strawberries as their predominant filling ingredient are not a rare or pricy delicacy that would make a reasonable consumer "double check" the relative amount of the strawberries by scouring the packaging.

39.     Toaster pastries with fruit fillings of only strawberries exist in the marketplace and are not technologically or otherwise unfeasible to produce.

40.     Moreover, competitor frosted toaster pastries from Great Value (Walmart) and Clover Valley (Dollar Tree) are described as "Strawberry," with pictures of strawberries, but they put consumers on notice that they have *less* strawberries than consumers would otherwise expect,

through the statement, "Naturally & Artificially Flavored."





41.   Consumers seeing Defendant's Product, which exclusively promotes strawberries, and fails to disclose the added (presumably natural) "Strawberry Flavor," and the more

8

"restrained" or truthful labeling of competitors, will purchase Defendant's Product, believing it is higher quality than it is.

42.    The FDA has consistently warned companies that fail to describe their products with a non-misleading, common, or usual name:

> Your Sour Cherry Juice (two unique brand names) and Sour Grape Juice (four unique brand names) products are misbranded within the meaning of section 403(i)(1) of the Act [21 U.S.C. § 343(i)(1)] because the statement of identity does not bear an accurate common or usual name. According to 21 CFR 102.33(a), for a carbonated or noncarbonated beverage that contains less than 100 percent and more than 0 percent fruit or vegetable juice, the common or usual name shall be a descriptive name that meets the requirements of 21 CFR 102.5(a).[8]

43.    The marketing and sale of foods which are advertised as containing a greater amount of strawberries than promised, is not unknown within this Circuit.

44.    In the fall of 1960, the FDA seized a shipment of "Strawberry Bars" where:

> [S]trawberries, had been in whole or in part omitted or abstracted therefrom; 402(b) (4) – figs and dates had been mixed or packed with the articles so as to increase their bulk or weight and make them appear of greater value than they were; and 403(a)-the label statements and the label vignettes depicting whole fresh fruit, apricots and strawberries, were false and misleading as applied to an article (Apricot Bars) containing no apricots, and an article (Strawberry Bars) containing a mixture of figs and dates and some strawberries.
>
> FDA, Notices of Judgment, No. 28302, "Fruit Bars," F.D.C. No. 45358, E. Dist. Mich., July 11, 1961.

45.    The Product is unable to confer any of the health-related benefits of strawberries because the amount of strawberry ingredient is insufficient to provide the benefits of this fruit.

46.    The Product cannot provide a true strawberry taste because the fruit filling ingredient

---

[8] FDA Warning Letter, Shemshad Food Products, Inc., W/L 28-11, March 11, 2011.

is mainly apples, boosted by "Strawberry Flavor."

## IV.   ADDED COLOR FURTHERS DECEPTION AS TO STRAWBERRY CONTENT

47.    The Product's filling is shown on the front label as red, the color of strawberries.

48.    According to the head of a prominent flavor and color manufacturer, "Color is the first thing a consumer may consider when purchasing a food or beverage item."

49.    To give consumers the false impression that the Product contains more strawberries than it does, it includes "vegetable juice for color."

50.    This causes the mainly apple filling to look red, like it would if it contained more strawberries, even though it contains a *de minimis* or negligible amount of strawberries.

51.    Without the added coloring, consumers would be suspect of a product labeled as only having strawberries, because the filling's color would be lighter instead of the red color.

52.    This could cause consumers to inspect the ingredient list to determine the truth.

53.    Additionally, according to the trade publication Food Processing, the addition of vegetable juice to color the fruit filling is "considered artificial since the [vegetable juice] is not inherent to the strawberry."

54.    However, the Product does not reveal the addition of this artificial coloring anywhere on the labeling other than the ingredient list, even though it is required to.

## V.   CONCLUSION

55.    Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

56.    By labeling the Product in this manner, Defendant gained an advantage against other companies, and against consumers seeking to purchase a product with more of the named

ingredient than it contained.

57. The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

58. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

59. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

60. The Product is sold for a price premium compared to other similar products, no less than approximately $2.99 per six pastries (11 oz or 312g), a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

61. Similar frosted toaster pastries which have equivalent amounts of strawberries to Defendant's Product are sold for $2.29 per six pastries (11 oz or 312g).

Jurisdiction and Venue

62. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

63. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

64. Plaintiff Heather Quinn is a citizen of Illinois.

65. Defendant Trader Joe's Company is a California corporation with a principal place of business in Monrovia, Los Angeles County, California.

66. Plaintiff and defendant are citizens of different states.

67. Defendant transacts business within this district, through the marketing, supply, and sales of its products at numerous physical stores which it operates within this district.

68.     Venue is in this district because plaintiff resides in this district and the actions giving rise to the claims occurred within this district.

69.     Venue is in the Eastern Division of this District because a substantial part of the events or omissions giving rise to the claim occurred in Lake County, i.e., Plaintiff's purchase of the Product and her awareness of the issues described here.

Parties

70.     Plaintiff Heather Quinn is a citizen of Lake Villa, Lake County, Illinois.

71.     Plaintiff likes strawberries for the same reason they are America's number one berry fruit.

72.     Defendant Trader Joe's Company, is a California corporation with a principal place of business in Monrovia, California, Los Angeles County.

73.     Defendant is an American chain of grocery stores with 530 stores nationwide.

74.     Trader Joe's is the most profitable grocery store per square foot in the country.

75.     Trader Joe's is a retailer that expresses its concern for the environment and labor practices.

76.     In 2007, reacting to customer concerns, Trader Joe's began to eliminate foods imported from China.

77.     Trader Joe's has been recognized by Greenpeace's CATO ("Carting Away the Oceans") program by removing unsustainable species of fish from its shelves.

78.     Trader Joe's discontinues individual products based on customer reactions more often than larger grocery chains.

79.     All these facts show a retailer with a significant amount of trust and equity when it comes to consumer purchasing.

80.     While a typical grocery store may carry 50,000 items, Trader Joe's stocks about 4,000 items, 80% of which bear one of its brand names.

81.     Trader Joe's sells regular groceries, but also gourmet foods, organic foods, vegetarian foods, unusual frozen foods, imported foods, and domestic and imported wine and beer.

82.     Defendant is known for its tough negotiating tactics with manufacturers of national brand products, who agree to produce their products under Trader Joe's private label or "store brands."

83.     These products are typically equal to, or exceed, their national brand counterparts, at a lower average price.

84.     Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at defendant's stores including the location at 1600 S Milwaukee Ave, Libertyville, IL 60048, between September and October 2021, among other times.

85.     Plaintiff bought the Product because she expected it had a greater absolute and relative amount of strawberries because that is what the front label said.

86.     Plaintiff relied on the word, "Strawberry," the pictures of strawberries, and the other representations described here.

87.     Plaintiff bought the Product at or exceeding the above-referenced price.

88.     Plaintiff relied on the representations identified here – the eight strawberries and no other pictured fruits, the trusted Trader Joe's name, the red packaging, the description of the Product's qualities on a wooden "farm fence," and the picture of the red filling shown on the front label.

89.     Plaintiff expected the Product had more strawberry than it did and certainly did not

13

expect *more* apples than strawberries, nor expect the Product to contain more corn starch than strawberries.

90.     Plaintiff would not have purchased the Product if she knew the representations were false and misleading or would have paid less for it.

91.     Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the statements and claims made by Defendant.

92.     The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

93.     Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations are consistent with its composition.

94.     Plaintiff is unable to rely on the labeling of this, and other Trader Joe's products, which means she buys less food there than before being aware of this issue.

95.     Plaintiff wants to resume purchasing at Trader Joe's in the same amount as she previously did.

<u>Class Allegations</u>

96.     Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged.

> **Consumer Fraud Multi-State Class:** All persons in the States of North Dakota, Kansas, Michigan, West Virginia, Wyoming, Texas, and Delaware, who purchased the Product during the statutes of limitations for each cause of action alleged

97.     Common questions of law or fact predominate and include whether defendant's

representations were and are misleading and if plaintiff and class members are entitled to damages.

98. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

99. Plaintiff is an adequate representative because her interests do not conflict with other members.

100. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

101. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

102. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

103. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act</u>
<u>("ICFA"), 815 ILCS 505/1, et seq.</u>

<u>(Consumer Protection Statute)</u>

104. Plaintiff incorporates by reference all preceding paragraphs.

105. Plaintiff and class members desired to purchase a product that had a greater absolute and relative amount of strawberries.

106. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

107. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

108. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

109. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

110. Plaintiff relied on the representations and omissions that the Product characterizing ingredient was strawberries, and had the benefits associated with that ingredient.

111. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

112. The Product was manufactured, identified, and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it had a greater absolute and relative amount of strawberries.

113. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

114. This duty is based on Defendant's outsized role in the market as a trusted retailer, known for its ethical and fair standards, which consumers equate with honest labeling.

115. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees.

116. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices.

117. The Product did not conform to its affirmations of fact and promises due to defendant's actions and was not merchantable because it was not fit to pass in the trade as advertised.

118. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

119.  Defendant had a duty to truthfully represent the Product, which it breached.

120.  This duty is based on defendant's position, holding itself out as having special knowledge and experience in this area, as a non-traditional retailer that puts its customers first above maximizing every penny of profit.

121.  The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, the leading grocer in the nation.

122.  Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

123.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Fraud

124.  Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it had a greater absolute and relative amount of strawberries.

125.  Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provide it with actual and/or constructive knowledge of the falsity of the representations.

126.  Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

Unjust Enrichment

127.  Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4.  Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5.  Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6.  Other and further relief as the Court deems just and proper.

Dated:   October 16, 2021

                                                          Respectfully submitted,

                                                          Sheehan & Associates, P.C.
                                                          /s/Spencer Sheehan
                                                          60 Cuttermill Rd Ste 409
                                                          Great Neck NY 11021
                                                          Tel: (516) 268-7080
                                                          spencer@spencersheehan.com